cal_____

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| WEBSIDESTORY, INC. | ) | Civil No.06cv408 WQH(AJB) |
| Plaintiff, | ) | |
| v. | ) | Order Denying Motion For |
| | ) | Protective Order |
| NETRATINGS, INC. | ) | [Doc. No. 61] |
| | ) | |
| Defendants. | ) | |
| | ) | |
| and related counter-claims. | ) | |
| | ) | |

Plaintiff, WebSideStory, moves the Court for a Protective Order under Federal Rule of Civil Procedure 26(b)(1) to quash defendant NetRatings' deposition notice for Mr. Jeffrey Lunsford, WebSideStory's former Chief Executive Officer (CEO) and current director, or to defer the deposition until such time as NetRatings has exhausted all other means and can substantiate a basis for Mr. Lunsford's deposition. Defendant, NetRatings has filed an opposition. This motion is appropriate for submission on the papers and without oral argument pursuant to Local Rule 7.1(d)(1). Based upon the moving papers and for the reasons set forth herein,

### *Relevant Background*

In the instant case, WebSideStory alleges that NetRatings infringes its patent, U.S. Patent No. 6,393,479 (hereinafter the '479 patent), which is directed to methods and systems for path analysis,

which involves tracking the manner in which users navigate through a website. NetRatings has sued WebSideStory for patent infringement in a parallel matter in the Southern District of New York. The current disputes arises from NetRatings Notice of Deposition for Jeffrey Lunsford, dated January 21, 2007.

### *Legal Standard*

#### *I. The Federal Rules Grant the Court Broad Discretion in the Handling of Discovery Matters*

The Court has broad discretion in controlling the timing of discovery. *Scroggins v. Air Cargo, Inc.*, 534 F.2d 1124 (5th Cir.1976). Additionally, the Federal Rules, by their plain terms, allow the court to limit discovery so as to avoid cumulation, duplication, harassment, expense and burdensomeness. *See* Fed. R. Civ. P. 26(b)(1). The discretion to limit discovery extends to imposing restrictions where the discovery sought "is obtainable from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(1). The court may issue a protective order responsive to the legal issues raised by the parties where it has been demonstrated to the court's satisfaction that such an order would be appropriate. Fed. R. Civ. P. 26(c).

#### *II. Motion for Protective Order*

Upon motion by a person responding to a discovery request, and for good cause shown, the Court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, undue burden or expense. Fed. R. Civ. P. Rule 26(c). However, to obtain a protective order, the party resisting discovery or seeking limitations thereon must show "good cause" for its issuance. *Id.; Jepson, Inc. v. Makita Elec. Works. Ltd.,* 30 F.3d. 854, 858 (7th Cir.1994)(the court must find good cause even if the parties stipulate to the protective order); *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. CA 1990). To establish good cause, the moving party must make a clear showing of a particular and specific need for the order. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *Pearson v. Miller*, 211 F.3d 57, 72 (3rd Cir. 2000) (a properly asserted claim of privilege is good cause for protective order); *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) ("broad allegations of harm, unsubstantiated by specific examples or articulate reasoning, do not satisfy the Rule 26(c) test").

In determining whether good cause exists for a protective order, the Court may consider the following relevant factors such as: 1) is the information being sought for a legitimate purpose; 2) will the disclosure violate any privacy interest; 3) will disclosure cause a party embarrassment; 4) whether disclosure is important to public health and safety; 5) will sharing of the information among litigants promote fairness and efficiency in the litigation; 6) whether the party seeking the protective order is a public entity or official; and 7) whether the case involves issues of public importance. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787-791 (3rd Cir. 1994).

The burden is upon the party seeking a protective discovery order to show good cause for the order by demonstrating a specific harm or prejudice that will result from the discovery. Fed. R. Civ. P. Rule 26(c); *Rivera v. Nibco, Inc.*, 364 F.3d 1057 (9th Cir. 2004); *Blankenship v. Hearst Corp.*, 519 F.2d 418 (9th Cir. 1975) (Under liberal discovery principles of the federal rules, those opposing discovery are required to carry a heavy burden of showing why discovery should be denied.). All that is required is an injury to legitimate interests in privacy, monetary injury is not required. *Pearson v. Miller*, 211 F.3d at 72-3.

### III. Apex Depositions

A party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied. However, when a party seeks to take the deposition of an official at the highest level or "apex" of a corporation, the court may exercise its authority under the federal rules to limit discovery. Fed. R. Civ. P. 26(b)(1); *See, e.g., Mulvey v. Chrysler Corp.*, 106 F.R.D. 364 (D.C. R.I.1985) (Virtually every court that has addressed deposition notices directed at an official at the highest level or "apex" of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment.).

The court has discretion to limit discovery and impose restrictions where the discovery sought "is obtainable from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(1). It is very unusual, however, for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances, as such an order would likely be in error.[1]

---

[1] *See* 4 J.Moore & J. Lucas, Moore's Federal Practice P 26.69 (3d ed.1976); 8 C. Wright & A. Miller, Federal Practice & Procedure section 2037 (1970).

When determining whether to allow an apex deposition, courts often consider: (1) whether or not the high-level deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case[2] and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods, such as interrogatories and depositions of lower level employees.[3]  When a high-level corporate executive lacks unique or superior knowledge of the facts in dispute, courts have found that good cause exists to prohibit the deposition.[4]  However, when a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition.[5]  Generally, a claimed lack of knowledge on behalf of the deponent does not alone provide sufficient grounds for a protective order.[6]  Moreover, the fact that the apex witness has a busy schedule is simply not a basis for foreclosing otherwise proper discovery." *CBS, Inc. v. Ahern*, 102 F.R.D. 820, 822 (S.D.N.Y. 1984).

### *Discussion*

In the instant case, WebSideStory moves the Court for a protective order under Fed. R. Civ. P. 26(b)(1) with regard to NetRatings January 21, 2007 deposition notice for Jeffrey Lunsford on the

---

[2] *First United Methodist Church of San Jose v. Atlantic Mutual Ins. Co.*, 1995 WL 566026, at *2 (N.D.Cal.1995); *Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir.1979).

[3] *See Salter v. Upjohn*, 593 F.2d 649, 651 (5th Cir.1979) (granting protective order for executive where plaintiff had sought to depose the president of the company before deposing lower level executives; *Baine v. General Motors Corp.*, 141 F.R.D. 332 (M.D.Ala.1991) (granting protective order for Vice President of General Motors where plaintiff had failed first to depose lower level employees).

[4] *See, e.g., Thomas v. Int'l Bus. Machines*, 48 F.3d 478, 482 (10th Cir. 1995); *Lewelling v. Farmers Ins. of Columbus, Inc.*, 879 F.2d 212, 218 (6th Cir. 1989); *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979); *see also* SHWARZER [sic], TASHIMA & WAGSTAFFE, CAL. PRACTICE GUIDE: FED. CIV. PRO. BEFORE TRIAL [¶] 11:345.5 (The Rutter Group 2002) ("The CEO of a corporation … may obtain a protective order from being deposed about matters as to which he or she has no personal knowledge. This prevents use of depositions for harassment purposes and protects such persons from the interference of the discovery process.").

[5] *Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 145 F.R.D. 92, 98 (S.D. La. 1992) (quoting *Digital Equipment Corp. v. Systems Industries, Inc.*, 108 F.R.D. 742, 744 (D. Ma. 1986)); *see also Anderson v. Air West, Inc.*, 542 F.2d 1090, 1092-93 (9th Cir. 1976) (plaintiffs may depose sole stockholder who "probably had some knowledge" regarding substance of plaintiffs' claims); *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (district court erred in granting protective order ordering plaintiff not to depose Herald-Examiner's publisher when plaintiff suggested possible information publisher might have that others did not); *Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 102-06 (S.D. N.Y. 2001) (compelling deposition of CEO of Sony Corporation when plaintiff "presented sufficient evidence to infer that [CEO] had some unique knowledge on several issues related to its claims").

[6] *Digital Equip. Corp.*, 108 F.R.D. at 744; *Amherst Leasing Corp. v. Emhart Corp.*, 65 F.R.D. 121, 122 (D. Conn. 1974); *Travelers Rental Co., Inc.*, 116 F.R.D. 140, 143 (D. Mass. 1987).

1  grounds that (1) Mr. Lunsford does not have any unique knowledge regarding the present action, and (2)
2  allowing NetRatings to depose Mr. Lunsford before deposing other WebSideStory employees would be
3  unduly burdensome and harassing. WebSideStory argues that Mr. Lunsford, the former CEO of
4  WebSideStory and current member of the board of directors, is an apex deponent, and as such,
5  NetRatings must demonstrate both that Mr. Lunsford has unique personal knowledge of the facts at
6  issue in this case and that other less intrusive discovery methods, such as interrogatories and depositions
7  of lower level employees, are inadequate.  Furthermore, to the extent that NetRatings has or will identify
8  relevant information that it seeks from Mr. Lunsford, WebSideStory states that it is prepared to offer a
9  declaration from Mr. Lunsford to substantiate his secondary level of knowledge of such information.

10         Alternatively, NetRatings argues that WebSideStory has not met its burden of demonstrating
11  why the discovery sought should not be permitted and contends that barring a litigant from taking a
12  deposition constitutes unusual and extraordinary relief.  NetRatings further argues that (1) Mr. Lunsford
13  is not the type of high level figure subject to harassment, about which the traditional apex witness case
14  is directed; (2) Mr. Lunsford was identified in WebSideStory's initial disclosures as a witness with
15  relevant information and WebSideStory's offer of a declaration and withdrawal of his identification as a
16  potential witness fails to change this; and (3) Mr. Lunsford has admitted unique personal knowledge
17  regarding the instant litigation.

18         As a preliminary matter, the Court will first address NetRatings contention that Mr. Lunsford is
19  not the type of high level figure that would warrant an apex classification as Mr. Lunsford is no longer
20  the CEO of WebSidestory and currently only serves on its board of directors. However, since Mr.
21  Lunsford is currently the CEO and Chairman of the Board of Directors for another company, Limelight
22  Networks, as well as a member of the Board of Directors for WebSideStory and its former CEO, Mr.
23  Lunsford is an official at the highest level or "apex" of a corporation, and while he may not possess the
24  celebrity status of apex deponents in other cases, the Court finds his responsibilities to current and prior
25  employers to be of similar proportions. *See Baine v. General Motors Corp.*, 141 F.R.D. 332, 335-36
26  (M.D.Ala.1991).

27         As an apex deponent, the Court will consider the following when determining whether to allow
28  NetRatings to take Mr. Lunsford's deposition: (1) whether or not the high-level deponent has unique

first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods, such as interrogatories and depositions of lower level employees. With regard to Mr. Lunsford relevant and non-repetitive first-hand knowledge, NetRatings contends that Mr. Lunsford is one of the few remaining company representatives that has been with the company for any period of time.[7] Mr. Lunsford was the CEO of WebSideStory from 2003 until 2006. In further support of their contentions, NetRatings references emails where Mr. Lunsford claims Netratings is infringing WebSideStory's patent and the identification of Mr. Lunsford by the Vice President of Marketing for WebSideStory in the related New York case as being one of only two people at WebSideStory to have performed a market share analysis with respect to WebSideStory's products, which would be relevant to damages in this case.[8] Based upon these arguments, the Court finds that Netratings has adequately established that Mr. Lunsford has unique, relevant knowledge.

WebSideStory responds in their moving papers that if NetRatings were to allege Mr. Lunsford to have unique and relevant knowledge with regard to the facts of this case, WebSideStory would provide a declaration from Mr. Lunsford stating that any information he has regarding such facts would be secondary. *See* Pla. Mot. at 3. However, as NetRatings' counsel aptly points out, a claimed lack of knowledge does not provide sufficient grounds for a protective order. *Digital Equipment Corp. v. System Industries, Inc.*, 108 F.R.D. 742, 744 (D.Mass.1986). NetRatings has demonstrated to the Court's satisfaction that Mr. Lunsford has personal knowledge of facts relevant to the lawsuit and he is therefore subject to deposition regardless of his position in the corporate hierarchy. *Id.* at 744.

Furthermore, while WebSideStory is free to identify witnesses under Rule 26 and to change such identifications as it deems appropriate, removal or change of a witness identification does not

---

[7] NatRatings states in their letter brief that neither of WebSideStory's founders (one of which is a named inventor on WebSideStory's patent) still work the company. Rand Schulman (WebSideStory's former Chief Marketing Officer), Peter Wells (WebSideStory's former Vice President of North American Sales and Operations), Tim Morgen (WebSideStory's former Director of Finance) have also left the company. Def. Ltr. Brf. at 3, fn. 3.

[8] NetRatings also references statements made by Mr. Lunsford during a recent settlement conference, however, such statements were made in the context of a confidential settlement conference with the Court and therefore may not be used by NetRatings to support their arguments before the this Court.

preclude the opposing party from deposing that witness.[9] The Court finds WebSideStory's argument that NetRatings should be required to exhaust other avenues of discovery prior to deposing Mr. Lunsford to be disingenuous light of the fact that NetRatings states that it served a Rule 30(b)(6) deposition notice on WebSideStory in November of 2006 and WebSideStory has yet to provide a witness responsive to this request. Def. Opp. at 3, fn.2. Since WebSideStory has delayed the 30(b)(6) deposition by failing to designate a witness, the fact that NetRatings has only taken one deposition, is as much WebSideStory fault, as it is NetRatings.[10] The Court takes this opportunity to admonish the parties that dilatory conduct on the part of one party, if any, is no excuse for clear-cut, prolonged dilatory activity on part of party moving for discovery. *Rutledge v. Electric Hose & Rubber Co.*, 511 F.2d 668 (9th Cir. 1975). The fact discovery cut-off in this case is April 10, 2007. NetRatings should have timely sought identification of a responsive witness and not waited four months only to mention WebSideStory's failure to provide a witness in the footnote of a letter brief. See Def. Opp. at 3.

Applying the legal standards set forth above to the instant case, the Court finds that WebSideStory has not met its burden for the issuance of a protective order, as they have failed to show good cause by demonstrating a specific harm or prejudice that will result from Mr. Lunsford's deposition. Fed. R. Civ. P. Rule 26(c); *Rivera v. Nibco, Inc*., 364 F.3d 1057 (9th Cir. 2004); *Blankenship v. Hearst Corp*., 519 F.2d 418 (9th Cir. 1975). Furthermore, NetRatings has demonstrated to the Courts satisfaction, that Mr. Lunsford is likely to have unique first-hand knowledge of the facts at issue in this case.

With regard to other less intrusive discovery methods, such as depositions of lower level employees, many of the upper level employees at WebSideStory are no longer with the company. The Court also notes that other depositions of WebSideStory employees have been conducted in the parallel action pending in New York. Additionally, due to the dilatory conduct of both parties, there is little time

---

[9] WebSideStory contends that its initial disclosures contained an express disclaimer that the inclusion of any name therein did not constitute an admission that such witness will have discoverable information. Initially Mr. Lunsford was identified as a potential witness with regard to company strategy, general information about competitive landscape, and general information concerning WebSideStory products. WebSideStory later withdrew the Rule 26 identification of Mr. Lundsford and stated that they do not plan to call him as a witness.

[10] The Court also notes that

remaining in the schedule before the discovery cut-off of April 10, 2007 to pursue other alternative discovery methods.

As a result, the Court ORDERS the parties to proceed forthwith with the deposition of the WebSideStory's Rule 30(b)(6) witness as this corporate deposition could satisfy some of NetRatings needs and at the very least, it would aid in developing and refining a line of questioning for Mr. Lunsford's deposition. WebSideStory's Motion for Protective Order is DENIED, however, NetRatings shall first proceed with the corporate deposition of WebSideStory's 30(b)(6) witness before taking Mr. Lunsford's deposition.  Furthermore, NetRatings shall appropriately limit the topics for Mr. Lunsford's deposition to areas where NetRatings has alleged Mr. Lunsford to have unique, first-hand knowledge of facts relevant to this case.[11]

### *Conclusion*

For the reasons set forth above, WebSideStory's Motion for Protective Order is hereby DENIED and the Court ORDERS as follows: (1) WebSideStory shall, if it has not already, provide the identity of a witness for NetRatings 30(b)(6) deposition within 24 hours from the issuance of this order and this deposition shall be scheduled forthwith and (2) the parties shall meet and confer within 72 hours regarding dates for the deposition of Mr. Lunsford and the 30(b)(6) witness.  If WebSideStory fails to name the 30(b)(6) witness as ordered, on an appropriate motion, the Court will consider recommending issue precluding sanctions.

IT IS SO ORDERED.

DATED: March 22, 2007

_____
Hon. Anthony J. Battaglia
U.S. Magistrate Judge
United States District Court

---

[11] *Tri-Star Pictures, Inc. v. Unger*, 171 F.R.D. 94, 102 (S.D.N.Y.1997) (citations omitted) ("[w]hen the discovery to be obtained is through the deposition of a senior executive, a court must remain mindful that 'permitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation"(placing strict restrictions upon continued deposition of Columbia Picture's Senior Vice President)); *see also Holman v. ICN Pharmaceuticals, Inc.*, No. 98 CIV. 0674(AKH) (HBP), 1999 WL 1267459 (S.D.N.Y. Dec. 29, 1999) (in product liability case, court permitted deposition of defendant's President, but limited it to four hours and district wherein the President resides or works).